## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

LORIA PHARMACEUTICAL, LLC;  )
LORIA MANAGEMENT, LLC; LORIA  )
COMPOUNDING CONSULTANTS AND  )
STAFFING SERVICES, LLC; AND  )
LORIA PRODUCTS, LLC,  )
                     )   Civil Action No.:
          Plaintiffs,  )
                   )
      v.  )
                   )
WALTER KANE, M.D.,  )
                   )
          Defendant.  )

## COMPLAINT

1. Plaintiffs bring this Complaint against Defendant asserting breach of contract, patent infringement, theft of trade secrets, related claims. Plaintiffs' claims originate from a contractual relationship between the parties under which Plaintiffs licensed to Defendant its United States Patent No. 9,993,578 (the "'578 Patent") and associated intellectual property.

## JURISDICTION AND VENUE

2. Because Plaintiffs assert claims under the United States laws regarding patents, jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 1338 (patents, copyrights, trademarks, and unfair competition), and 1367 (supplemental) for Plaintiffs' state law claims. Jurisdiction would also be proper under 28 U.S.C. § 1332 consistent with the parties' citizenship and the amount in controversy exceeding $75,000.

3. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue is also proper under 28 U.S.C.

§ 1400, consistent with the exclusive venue selection clause in the agreements between Plaintiffs and Defendant. *See* Exhibit 1 at ¶14.10 and Exhibit 3 at ¶ 14.12 ("[J]urisdiction and venue in any action brought by any party pursuant to this agreement shall properly and exclusively lie in any federal or state court located in Palm Beach County in the State of Florida").

## PARTIES

4. Victor Loria, D.O. ("Dr. Loria"), has performed cosmetic, dermatologic surgery, hair restoration, and other procedures for over 30 years. Beginning in 2010, Dr. Loria's medical practice has focused on male enhancements.[1] Dr. Loria is licensed in California, Florida, and New York. Dr. Loria has been, at all times relevant to this Complaint, a citizen and resident of the State of Florida. Dr. Loria is listed as an inventor on at least three issued United States patents, including the male enhancement patent at issue in this matter: United States Pat. No. 9,993,578 issued on June 12, 2018. Dr. Loria has performed over 10,000 male enhancement procedures.

5. Dr. Loria owns and controls a number of entities incorporated in Florida and offering procedures in multiple locations[2] that undertake various aspects of a male enhancement medical practice and a range of enterprises that undertake medical research and development, protection and licensing of intellectual property, creation of pharmaceuticals, and related operations in support of male enhancement medical practices of Dr. Loria and medical professionals operating under licenses granted by the various enterprises. The following enterprises i) incorporated in Florida; ii) having their principal places of business at 3625 NW 82ND Ave. Ste 402, Miami FL

---

[1] Male enhancement includes both cosmetic procedures such as penile enlargement as well as correction of penile curvature or treatment including treatment of Peyronie's Disease. See, for example, https://www.loriamedical.com/procedures/.

[2] Locations at which Plaintiff offers procedures include: Miami – Doral, Miami, Orlando, and Tampa / St. Petersburg.

33166; and iii) owned by Dr. Loria are relevant to claims asserted herein (collectively "Loria Enterprise"):

    a.  Loria Medical, LLC;

    b.  Loria Pharmaceutical, LLC, successor to Lorstan Pharmaceutical, LLC;

    c.  Loria Pharmaceutical International, LLC;

    d.  Loria Management, LLC;

    e.  Loria Marketing, LLC;

    f.  Loria Physicians Group, LLC successor to Loria Compounding Consultants and Staffing Services, LLC; and

    g.  Loria Products, LLC.

6. Walter Kane, M.D. ("Dr. Kane") claims to be licensed to practice medicine in multiple states, including California, Illinois, and Texas. See https://affordablepenisenlargement.com/about/. The Texas Medical Board lists Dr. Kane's primary practice address as 25420 Kuykendahl A200, The Woodlands, TX 77375. The Texas Medical Board reports that Dr. Kane has 26 years of active practice in Texas. The California Medical Board lists Dr. Kane's "address of record" as 11 Hammock Dunes Pl., The Woodlands, TX 77389-4235.[3] Dr. Kane operates at least two websites to solicit male enhancement clients: www.affordablepenisenlargement.com and www.bigmaleenhancement.com. Dr. Kane claims to have business locations in nine states and 14 cities: Atlanta (2 locations), Austin; Chicago (2 locations); Dallas; Denver; Houston; Los Angeles (West Hollywood); New Orleans; Orange, CA; Phoenix; Salt Lake City; San Antonio; Santa Monica; and Seattle (Bellvue).[4] Dr. Kane is also

---

[3] 11 Hammock Dunes Place, The Woodlands, TX 77389-4235 is a residence, not a business location.

[4] Cities and specific business locations claimed by Kane are listed at https://affordablepenisenlargement.com/about/ and at https://bigmaleenhancement.com/.

licensed as an attorney in Texas since 2002. The Texas Bar Association lists his primary practice location as 11 Hammock Dunes Place, The Woodlands, TX 77389.

## FACTUAL BACKGROUND

### I. Plaintiffs' History

7. For nearly a quarter of a century, Plaintiffs and Dr. Loria have spent millions of dollars developing procedures and pharmacology, purchasing equipment, researching and testing, training, and otherwise creating intellectual property associated with male enhancement. Plaintiffs' intellectual property includes, but is not limited to, the '578 Patent. A wide variety of trade secrets are included in Plaintiffs' intellectual property, having been developed by the expenditure of time and money over decades. Plaintiffs' intellectual property associated with male enhancement, including its "confidential information," "trade secrets," and the '578 Patent will be referred to as "Male Enhancement IP Portfolio."[5]

8. Plaintiffs undertake commercially reasonable efforts to maintain confidentiality regarding their Male Enhancement IP Portfolio, including provisions in licensing agreements and nondisclosure agreements with personnel and contractors. To protect patient medical records and its Male Enhancement IP Portfolio, Plaintiffs maintain high data security standards.

9. Plaintiffs' trade secrets include financial, business, scientific, technical, economic, and engineering information (including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes), both tangible and intangible. The trade secrets include formulations, procedures, pricing, and a wide

---

[5] "Confidential information" and "trade secrets" are terms defined in the License Agreement and Second License Agreement, and Plaintiffs intend those terms here to be as broad as reasonably allowed by Florida or federal law as may be applicable to specific claims.

range of other information developed by Plaintiffs over decades of offering male enhancement services.

10. Plaintiffs' trade secrets confer a competitive advantage to Plaintiffs. The trade secrets derive both actual and potential independent economic value from not being generally known to or readily ascertainable through proper means by another person who can obtain economic value from disclosing or using the information. The economic advantage generated by Plaintiffs' trade secrets is illustrated by the significant interest in licensing its Male Enhancement IP Portfolio by many medical professionals and from licensing agreements actually entered into by it. Plaintiffs have trained more than 20 physicians over three years, with others scheduled to be trained, and have 20 licenses in effect.

11. In 2019, Dr. Loria began licensing the Male Enhancement IP Portfolio. Dr. Loria initially licensed the Male Enhancement IP Portfolio through Lorstan Pharmaceutical, and the '578 Patent was initially applied for with this entity as its assignee. Dr. Loria identified medical professionals with the necessary skills and interests to set up medical practices using the Male Enhancement IP Portfolio. Licensing occurred via an Independent Licensee and Service Agreement (see discussion below) with each licensed medical provider operating within a defined territory. Prior to the medical provider offering male enhancement services using the Male Enhancement IP Portfolio, they would receive medical training from Plaintiffs and/or Dr. Loria.

## II. Interactions with Kane

12. Kane, individually and with a medical doctor named Matthew Sam ("Dr. Sam"),[6] contacted Plaintiffs and expressed an interest in licensing the Male Enhancement IP Portfolio. After several discussions, Kane and Dr. Sam visited the Plaintiffs' facilities in Florida and expressed their desire to make an agreement with them.

13. Kane and Dr. Sam entered an Independent Licensee and Service Agreement with Loria Pharmaceutical, LLC, Loria Management, LLC, Loria Compounding Consultants and Staffing Services, LLC, and Loria Products, LLC, on December 31, 2020 ("License Agreement"). *See* Exhibit 1. The territory for which Kane was licensed to use the Male Enhancement IP Portfolio included Harris County, Texas (Houston), and eight counties surrounding Harris County, comprising a total population of approximately 7 million.

14. Thereafter, Kane and Dr. Sam entered an amended Independent Licensee and Service Agreement with the same parties on April 22, 2021 ("Second License Agreement"). *See* Exhibit 2. In the Second License Agreement the territory for which Kane received a license was narrowed to Harris and Montgomery Counties. *Id*. at 32. The rationale behind the narrowed territory was explained in a communication to Kane accompanying the Second License Agreement. *Id*. at 2.

15. Both the License Agreement and the Second License Agreement included provisions defining Plaintiffs' "confidential information" and "trade secrets" and requiring Kane to protect the same. Exhibit 1 at ¶ 2.3 (defining "Confidential Information"), ¶ 2.22 (defining "Trade Secret"), and ¶ 6.1 – 6.4; Exhibit 3, ¶ 2.3, ¶ 2.23 and ¶ 6.1 – 6.4. Kane's obligation to hold all Confidential Information in confidence survived termination for a period of at least two years, and

---

[6] Dr. Sam is not identified as a party because, on information and belief, Dr. Kane forced him out of their business relationship, and the acts complained of herein have not been undertaken by Dr. Sam since the Second License Agreement was terminated. Should discovery reveal the foregoing is incorrect, Plaintiffs reserve the right to add Dr. Sam as a defendant.

the duty to protect Plaintiffs' Trade Secrets survives "so long as the information remains a Trade Secret," which remains true to present. *See* Exhibits 2 and 3 at ¶ 6.2.

16. In 2021 and 2022, Kane paid fees for staff, lab services, and patented filler material under the License Agreement and Second License Agreement. However, Kane only purchased meaningful product for about six months: just long enough to analyze the material and get accustomed to its use in his facilities. The whole relationship was part of Kane's plan from the start to secure necessary information and training, then to abandon his obligations to Plaintiffs.

17. During the term of the First and Second License Agreements, Kane repeatedly pressed Plaintiffs for details of how Plaintiffs' patented materials were compounded. The level of inquiry undertaken by Kane was unusual, compared to other licensees. Plaintiffs initially took the inquiries as Kane conducting due diligence to ensure quality materials and to protect his patients' safety. In retrospect, however, the relentless pressure for more disclosure was part of a calculated campaign to gather information and know-how to enable Kane to compound Plaintiffs' patented products and to continue offering procedures after breaching the Second License Agreement.

### III. Kane's Breach of Contract

18. On March 15, 2022, Plaintiffs' counsel informed Kane about his breach of the Second License Agreement. *See* Exhibit 3. Kane violated the Second License Agreement's terms by marketing and operating outside the territory described in the Second License Agreement. Plaintiffs reminded Kane of his obligation to keep the Male Enhancement IP Portfolio confidential and to refrain from reverse-engineering it. To renew, Kane needed to sign a new Independent Licensee and Service Agreement as well as the Subscription Agreement. Despite it being required, he refused to sign, and instead indicated that he wanted to go forward with a handshake deal. Moreover, Kane breached the agreement by offering services at pricing that violated the minimum

cost provisions of the Second License Agreement. Furthermore, Kane refused to comply with the recordkeeping and data-sharing provisions of the Second License Agreement. Plaintiffs gave Kane 60 days to cure the breaches.

19. Additionally, Kane appeared to be shipping doses of filler across state lines, which is of questionable legality.

20. Kane failed to respond to the letter notifying him he was in breach of the Second License Agreement.

21. On May 16, 2022, Plaintiffs sent Kane a notice of termination. *See* Exhibit 4. The letter reminded Kane of his duty not to infringe the '578 Patent and warned him that his website included arguably deceptive claims.

22. Kane has engaged in blatant misleading and deceptive advertising. For example, in 2022, Kane's website (www.affordablepenisenlargement.com) claimed he had "over 10,000 satisfied patients" for male enhancement, which was false. By contrast, Dr. Loria did then and does now have that number of satisfied male enhancement patients. Kane effectively admitted the inaccuracy of his claims as his website now claims "over 7,000 procedures performed." *See* https://bigmaleenhancement.com/#free_fcalp_fnalysis.

23. Kane plagiarized Dr. Loria's website (www.loriamedical.com) by, inter alia, stating:

   a. Kane's procedures require no surgery, cutting, stitching, or general anesthesia.

   b. Kane uses "a collagen layering activation filler material," which is Plaintiffs' proprietary, patented formula.

24. Unlike other temporary competitive formulas, Dr. Loria offers a unique, patented formula that is permanent. Additionally, Loria strictly follows 503A Standards (according to USP 797) for compounding to ensure purity, quality, and safety.

25. Dr. Loria does not know where Kane is obtaining his "formula," much less how Kane can assert "permanent" results. Kane is infringing on the '578 Patent and compounding Dr. Loria's formula in violation of federal patent law. Upon information and belief, Kane claims to be using Plaintiffs' patented formulations and is, in fact, using the same in violation of Plaintiffs' patent rights.

26. Kane is compounding without authority, and there is no assurance that his formula is compounded properly, which is a potential issue for patient safety and efficacy. One of two things may be happening: Kane is either transporting compounded formula across state lines, which is of questionable legality; or Kane is carelessly compounding onsite without proper lab facilities, posing risks of poor quality materials, contamination, and infection.

27. Upon information and belief, Kane has induced other medical providers to infringe on the '578 Patent by performing male enhancement procedures using materials that infringe the '578 Patent at facilities owned or controlled by Kane.

28. Either the actual existence of the number of offices indicated by Kane is illusory – he does not actually practice at those locations with any frequency – or Kane is or has employed at least one medical professional to perform male enhancement procedures using formulations that infringe the '578 Patent and incorporate the Male Enhancement IP Portfolio. If Kane has induced additional medical providers to perform male enhancement procedures, their actions are covered by License Agreement and Second License Agreement as sub-licensees, and their actions would be in breach of the License Agreement and Second License Agreement because Plaintiffs did not specifically authorize any sub-licensees. *See* Exhibits 1 and 2 at ¶ 3.6.

## 1ST CAUSE OF ACTION: BREACH OF CONTRACT

29. Plaintiffs restate and incorporate by reference allegations 1-28.

30. The parties entered into enforceable agreements associated with the Male Enhancement IP Portfolio. The express terms of the License Agreement and Second License Agreement are enforceable under Florida law.

31. Defendant breached the Second License Agreement as described herein, including by, inter alia:

    a. Using the Male Enhancement IP Portfolio outside of his defined territory in violation of Art. III. Kane had rights to Harris County (Houston) and, at various times, one or more counties surrounding it. Yet Kane is now using the Male Enhancement IP Portfolio in multiple states and cities.

    b. Failing to pay royalties and compensation per Art. IV of the Second License Agreement. Kane failed to provide required reports or make required payments associated with "Licensed Products."

    c. Failing to abide by quality standards and quality control required by Art. V of the Second License Agreement. Kane failed to provide information on any persons undertaking compounding or of the ingredients being used. Kane failed to provide any documentation regarding the facilities in which any compounding is occurring. Kane has failed to maintain competency by ongoing training from time-to-time.

    d. Continuing to use the Male Enhancement IP Portfolio following termination of Defendant's right to do so under the Second License Agreement.

    e. Violating the non-compete and non-solicitation provisions of Art. VIII following termination of the Second License Agreement. Kane is improperly employed or otherwise engaged in any capacity, in any business in competition with Plaintiffs

relating to the '578 Patent, the "Licensed Products," the "Licensed Methods" or the "Licensed Use". See Exhibit 2 at ¶ 2.7 – 2.10 and ¶ 8.1. Kane's breaches of these provisions are causing irreparable injury to Plaintiffs. *See* Exhibit 2 at ¶ 8.3.

32. Kane's breaches of the Second License Agreement are material and go to the very essence of the contract.

33. Kane's breaches directly damaged Plaintiffs. Damages include failure to pay fees under the Second License Agreement and to engage in transactions with Plaintiffs as specified in the Second License Agreement and related pricing documents.

34. Moreover, Kane's breaches indirectly damaged Plaintiffs by, for example, harming their reputation, taking clients that otherwise would have engaged Plaintiffs or medical providers licensed by Plaintiffs, and depressing prices for services offered using the Male Enhancement IP Portfolio.

## 2ND CAUSE OF ACTION: PATENT INFRINGEMENT

35. Plaintiffs restate and incorporate by reference allegations 1-28 and 30-34.

36. The '578 Patent is a valid and enforceable patent issued June 12, 2018, and owned exclusively by Plaintiffs pursuant to an assignment from Lorstan Pharmaceutical, LLC recorded September 9, 2020, and effective not later than that date.

37. The '578 Patent teaches a "silicone oil-in-water composition useful as an injectable filler and as a scaffold for collagen growth." The abstract of the patent describes it thus:

> The present invention relates to compositions in the form of oil-in-water dispersions comprising a silicone oil having an average droplet diameter from about 30 microns to about 2000 microns and a polymeric thickening agent. These compositions are useful for stimulating collagen production in human patients and other mammals, and have applications for soft tissue augmentation for various medical and cosmetic procedures. The present invention also relates to methods for preparing these compositions and to methods for stimulating collagen production in human patients

and other mammals in need thereof. In contrast to the prior art, the compositions and methods of the present invention are particularly useful for stimulating the production of high quality collagen that is uniform, smooth, long-lasting, and having good structural integrity.

38. Illustrative of the claims of the '578 is Claim 1 which claims a "filler composition comprising:"

    a.  1% to 80% of a silicone oil having a viscosity from 12500-30000 centistokes (cSt);

    b.  20% to 99% of water; and

    c.  0.005% to 10% of a thickening agent,

wherein the filler composition is a pharmaceutically acceptable oil-in-water emulsion, the silicone oil is dispersed in the water as droplets having an average diameter from 30 microns to 2000 microns and the thickening agent is sufficiently biodegradable when implanted subcutaneously in a human to provide a temporary scaffold for collagen growth between silicone oil droplets.

39. Kane had access to and learned the characteristics of the filler composition Plaintiffs offer for sale incorporating the teachings of the '578 Patent.

40. Kane has not undertaken his own research sufficient to create his own filler composition without incorporating the teachings of the '578 Patent.

41. Upon information and belief, Kane holds himself out as offering male enhancement procedures that use the "Loria Method" and "Loria formula" or words to that effect.

42. Based on the foregoing, upon information and belief, Plaintiffs allege Kane's procedures use a filler composition that infringes the '578 Patent.

43. Kane has directly infringed, and is directly infringing, the '578 Patent under 35 U.S.C. § 271(g) by importing, selling, offering to sell, and/or using the infringing materials in the United States.

44. Kane has directly infringed, and is directly infringing, the '578 Patent under 35 U.S.C. § 271(g) because: (a) he is importing, selling, offering to sell, and/or using infringing materials in the U.S., and (b) it is controlling, directing, and/or participating with others to import, sell, offer to sell, and/or use infringing materials in the U.S.

45. Kane has knowledge of the '578 Patent and knows the infringing materials are covered by one or more claims of the '578 Patent, and thus his infringement is and continues to be willful and deliberate.

46. Plaintiffs have been and will continue to be damaged by Kane's infringement in an amount to be determined at trial.

47. Plaintiffs have suffered irreparable harm due to Kane's infringement and will continue to suffer irreparable harm unless Kane is enjoined by this Court. *See* also Exhibit 2 at ¶ 8.3.

### 3RD CAUSE OF ACTION: THEFT OF TRADE SECRETS

48. Plaintiffs restate and incorporate by reference allegations 1-28, 30-34, and 36-47.

49. Plaintiffs own trade secrets, as pled above, consistent with both state and federal law. *See* Fla. Stat. § 688.002(4) and 18 U.S.C. § 1839(3).

50. Kane misappropriated Plaintiffs' trade secrets under both state and federal law. *See* Fla. Stat. § 688.002(1) ("improper means" includes "breach of a duty to maintain secrecy") and (2); 18 U.S.C. § 1839(5) and (6) ("improper" acquisition of a trade secret includes "breach of a duty to maintain secrecy").

51. Kane used improper means to acquire Plaintiffs' trade secrets. The improper means employed by Kane include breach of an express duty to maintain secrecy (or inducement to breach such a duty), and/or espionage through electronic or other means. *See* Exhibit 2, Art. VI.

52. After improperly acquiring Plaintiffs' trade secrets, Kane has used Plaintiffs' trade secrets to perform male enhancement procedures.

53. Kane, "with intent to convert a trade secret[,]" offered and provided goods and services "used or intended for use in interstate…commerce to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret." 18 U.S.C. § 1832. In doing so, Kane knowingly engaged in one or more of the following wrongful acts:

> (15) steals, or **without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information**;
>
> (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;
>
> (3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;
>
> (4) attempts to commit any offense described in paragraphs (1) through (3); or
>
> (5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy….
>
> *Id.* (emphasis added to more likely applicable provisions).

54. Entry of an order of civil seizure is justified under 18 U.S.C. § 1836(b)(2), but Plaintiffs lack sufficient information to identify the specific property in Kane's possession that is subject to seizure. Kane compounds the materials from products provided by unknown suppliers, and it is not known at what locations that compounding occurs. Upon discovery, Plaintiffs anticipate seeking a civil seizure order of products incorporating Plaintiffs' trade secrets.

55. An injunction should be granted "requiring affirmative actions [by Kane] to protect the trade secret[s]." 18 U.S.C. § 1836(b)(3)(A)(ii). Specifically, for example, Kane should be required

to marshal all records in which the trade secrets are included and to identify all persons privy to the secrets so that the information can be recovered and appropriate notice can be given to persons so identified.

56. Plaintiffs ask the Court to –

award (i)(I) damages for actual loss caused by the misappropriation of the trade secret; and

(II) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or

(ii) in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret;

(C) if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B).

18 U.S.C. § 1836(b)(3)(B).

57. Kane willfully and maliciously misappropriated Plaintiffs' trade secrets. Kane undertook a calculated scheme to secure all of the Male Enhancement IP Portfolio as a part of a plan or scheme to launch his own practice using same without paying Plaintiff.

58. Under Florida law, Plaintiffs are entitled to injunctive relief and damages associated with Kane's theft of trade secrets. Fla. Stat. § 688.003 (injunctive relief) and 688.004 (damages). The Court may enjoin actual or threatened misappropriation, and the injunction may remain in place even after the trade secrets cease to exist. Damages should be awarded for both "the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." Fla. Stat. § 688.004(1). Given that Kane's misappropriation was willful and malicious, the damages should be doubled. Fla. Stat. § 688.004(2).

## 4TH CAUSE OF ACTION: FALSE AND MISLEADING ADVERTISING

59. Plaintiffs restate and incorporate by reference allegations 1-28, 30-34, and 36-47; and 49 – 58.

60. Kane maliciously and willfully engaged in false or misleading advertising including, but not limited to, the following:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (16) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

61. For Kane's willful violation, Plaintiffs seek 1) Kane's profits, 2) damages sustained by Plaintiffs, and 3) the costs of this action. 15 U.S.C. § 1117(A).

62. Kane violated Florida law by "make[ing] or disseminate[ing] or cause[ing] to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement." Fla. Stat. § 817.41(1).

63. Florida law provides that the prevailing party on a misleading advertising claim shall be awarded costs, including reasonable attorney's fees. Fla. Stat. § 817.41(6). In addition, the prevailing party may recover actual damages proven as well as punitive damages. *Id.*

## 5TH CAUSE OF ACTION: FRAUD IN THE INDUCEMENT

64. Plaintiffs restate and incorporate by reference allegations 1-28, 30-34, and 36-47; 49 – 58; and 60 – 63.

65. To induce Plaintiffs to enter the License Agreement and Second License Agreement, Defendant made a (1) a false statement concerning a material fact; (2) with knowledge that the representation was false; (3) with the intention that the representation induce Plaintiffs' reliance; and (4) consequent injury was suffered by Plaintiffs in reliance on the representation.

66. The false statement concerning a material fact was made by Defendant in executing the license agreements. For example, Dr. Kane alleged that he "desire[d] to obtain…only a licensce to Licensor's intellectual property." Exhibit 1 at p.6, first complete "whereas" clause. Dr. Kane also stated his intent to not compete with Plaintiffs nor solicit transactions in competition with Plaintiffs. *Id.* at Art. VIII.

67. Throughout 2021 and into 2022, Kane paid fees under the License Agreement and Second License Agreement associated with staff and lab services and to purchase patented filler material. However, the period during which Kane actually purchased meaningful product only covered a period of six months: just long enough for Kane to analyze the material and get accustomed to its use in his facilities. Kane did not plan to be in a long-term relationship with Plaintiffs, but rather only to remain under the agreements until he knew enough to go out on his own.

68. During the term of the First and Second License Agreements, Kane repeatedly pressed for details regarding how Plaintiffs' patented materials were compounded. The level of inquiry undertaken by Kane was unusual, but Plaintiffs initially took the inquiries as Kane conducting due diligence to ensure quality materials and to protect his patients' safety. In retrospect, however, the relentless pressure for more disclosure was a calculated campaign to gather information and know-

how to enable Kane to compound Plaintiffs' patented products and to continue offering procedures after breaching the Second License Agreement.

69. The foregoing evidence an intent by Dr. Kane, at the time he executed the agreements, to secure training, access to trade secrets, access to Plaintiffs' patented formulations, with the intent of using that information to open his own practice in violation of the License Agreement and Second License Agreement.  Kane said whatever he had to say to induce Plaintiffs to reveal sufficient information to him to allow him to execute his plan. However, Kane never intended to be a long-term licensee of Plaintiffs, but rather to surreptitiously organize and then open a practice in competition with Plaintiffs.

70. Kane entered the License Agreement and Second License Agreement with no intent to perform. Rather, the agreements were the only way Kane could get access to the training, trade secrets, and patented formulations needed to open his own practice, independent of Plaintiffs.

## PRAYER FOR RELIEF

71. WHEREFORE, Plaintiffs pray for judgment against Kane as follows:

   a. A finding that Kane breached the provisions of the License Agreement and Second License Agreement, damaging Plaintiffs and an award to Plaintiffs of damages caused by the breach as allowed by Plaintiffs' agreements and under Florida law.

   b. A finding that Kane has directly infringed one or more claims of the '578 Patent under 35 U.S.C. § 271(g).

   c. Preliminary and permanent injunctive relief enjoining Kane and his managers, employees, affiliates, agents, representatives, parents, subsidiaries, successors, assigns, those in privity with him, and all others aiding, abetting, or acting in concert or active participation therewith, from selling, offering to sell, importing,

or using in the U.S. any articles infringing any of the claims of the '578 Patent or otherwise directly or indirectly infringing the '578 Patent or of using Plaintiffs' trade secrets or confidential information. At least three bases exist for injunctive relief:

    i.   The parties agreed that Kane's breaches of the agreements' provisions are causing irreparable injury to Plaintiffs. *See* Exhibit 2 at ¶ 8.3;

    ii.   Plaintiffs have been and will continue to be damaged by Kane's infringement of the '578 Patent have suffered irreparable harm due to Kane's infringement and will continue to suffer irreparable harm unless Kane is enjoined by this Court; and

    iii.   Plaintiffs are entitled to injunctive relief and damages associated with Kane's theft of trade secrets under Fla. Stat. § 688.003.

d. Compensatory damages under 35 U.S.C. § 284.

e. Treble damages under 35 U.S.C. § 284.

f. An order that Kane account to Plaintiffs for all sales, revenues, and profits derived from their infringing activities and that three times those profits be disgorged and paid to Plaintiffs under 35 U.S.C. § 284.

g. A finding that Kane's infringement was willful and exceptional and an award of attorneys' fees and litigation-related expenses under 35 U.S.C. § 285 and the Court's inherent authority.

h. Damages for misappropriation of trade secrets including both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is considered in computing actual loss.

i.   Damages for willful and malicious misappropriation in an amount twice the award made under subsection (a), as well as attorney fees.

j.   A finding that Kane made false and misleading statements in his advertising and or Kane's willful violation, Plaintiffs seek 1) Kane's profits, 2) damages sustained by Plaintiffs, and 3) the costs of this action. 15 U.S.C. § 1117(A).

k.   A finding that Kane violated Florida law by "make[ing] or disseminate[ing] or cause[ing] to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement." Fla. Stat. § 817.41(1).

l.   Awarding Plaintiffs as the prevailing party on a misleading advertising claim costs, including reasonable attorney's fees. Fla. Stat. § 817.41(6). In addition, the prevailing party may recover actual damages proven as well as punitive damages. *Id*.

m.   Awarding punitive damages to Plaintiffs associated with Defendant's fraud inducing Plaintiffs to enter the License Agreement and Second License Agreement.

n.   Pre-judgment and post-judgment interest.

o.   Costs of the action.

p.   Such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand trial by jury for all issues so triable.

Dated: June 13, 2023

Respectfully submitted,

*/s/ Jake Phillips*
Jacob L. Phillips
Florida Bar No. 120130
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel:  (407) 603-6031
Fax: (888) 974-2175
jacob.phillips@normandpllc.com
ean@normandpllc.com

*/s/ Edward L. White\**
Edward L. White, OBA # 16549\*
**EDWARD L. WHITE, P.C.**
829 East 33rd Street
Edmond, OK 73013
Tel:  (405) 810-8188
Fax: (405) 608-0971
ed@edwhitelaw.com

**ATTORNEYS FOR PLAINTIFFS**

(\**pro hac vice* admission will be sought)

**ATTORNEY LIEN CLAIMED**